**EXHIBIT A**
**TO DECLARATION OF JENNIFER C. BONILLA IN SUPPORT OF JOINT MOTION**
**FOR THE COURT TO APPROVE PAGA SETTLEMENT AND RETAIN**
**JURISDICTION OVER JUDICIALLY APPROVED SETTLEMENT**

United States District Court for the Southern District of California
Case Nos. 13-cv-2473-JLS (KSC) and 14-cv-2984-JLS (KSC)

JOINT STIPULATION OF SETTLEMENT AND RELEASE FOR RELATED ACTIONS
RINCON AND VALERIO ESPINOZA

Cynthia L. Rice, SBN 87630
**CALIFORNIA RURAL LEGAL ASSISTANCE, INC.**
1430 Franklin Street, Suite 103
Oakland, CA 94612
Telephone:  (510) 267-0762
Facsimile:  (510) 267-0763

Attorneys for Plaintiffs

[all other counsel listed on next page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERAFIN RINCON ET AL.,<br><br>        Plaintiffs,<br><br>    v.<br><br>WEST COAST TOMATO GROWERS, LLC ET AL.,<br><br>        Defendants. | Case Nos.:  13cv2473-JLS (KSC) and<br>            14cv2984-JLS (KSC)<br><br>**JOINT STIPULATION OF SETTLEMENT AND RELEASE FOR RELATED ACTIONS *RINCON* AND *VALERIO ESPINOZA***<br><br>Judge:      Hon. Janis L Sammartino<br>Courtroom: 4D |
| ELISA VALERIO ESPINOZA ET AL.,<br><br>        Plaintiffs,<br><br>    v.<br><br>WEST COAST TOMATO GROWERS, LLC,<br><br>        Defendant. | |

1  Michael Meuter, SBN 161554
2  **CALIFORNIA RURAL LEGAL ASSISTANCE, INC.**
3  3 Williams Road
   Salinas, CA 93905
4  Telephone: (831) 757-5221
   Facsimile: (831) 757-6212
5

6  Jennifer C. Bonilla, SBN 259614
7  **CALIFORNIA RURAL LEGAL ASSISTANCE, INC.**
8  640 Civic Center Drive, Suite 108
   Vista, CA 92084
9  Telephone: (760) 966-0511
10 Facsimile: (760) 966-0291

11 Attorneys for Plaintiffs
12
13 Julie A. Vogelzang, State Bar No. 174411
   Lisa Hird Chung, State Bar No. 246766
14 **SCHOR VOGELZANG LLP**
15 600 B Street, Ste. 2200
   San Diego, CA 92101
16 Telephone: (619) 906-2400
   Facsimile: (619) 906-2401
17
18 Attorneys for Defendant West Coast Tomato Growers,
19 LLC

20 William Moore
21 **THE MOORE FIRM**
   5755 Oberlin Drive, Suite 301
22 San Diego, CA 92121
   Telephone: (858) 210-7999
23
24 Attorneys for Defendants Harry Singh and Sons Farming
25 Partnership, L.P., and Harry Singh & Sons, LLC
26
27
28

1 of 35

1    This Joint Stipulation of Settlement and Release (hereinafter "Settlement" or

2    "Agreement") is made and entered into by and between plaintiffs Santiago Bautista,

3    Guillermina Bermudez, Cipriano Capistran, Felix Gomez Diaz, Maria Martinez,

4    Lorenzo Lopez Pastrana, Serafin Rincon, Arturo Salgado Manzano, Elisa Valerio

5    Espinoza, and Rufino Zafra (hereinafter "Plaintiffs"), individuals, on behalf of

6    themselves and as private attorney generals on behalf of other aggrieved employees

7    ("PAGA Members"), on the one hand, and defendants West Coast Tomato

8    Growers, LLC, Harry Singh & Sons, LLC, and Harry Singh and Sons Farming

9    Partnership, L.P. ("Defendants") on the other hand.  Plaintiffs and Defendants are

10   collectively referred to herein as "the Parties."

11   This Stipulation addresses the simultaneous settlement of two related cases

12   that are currently pending before the Court:  (1) *Serafin Rincon et al., Plaintiffs v.*

13   *West Coast Tomato Growers, LLC et al., Defendants*, Case No. 13cv2473-JLS

14   (KSC) filed on September 10, 2013 (the "*Rincon* Case"); and (2) *Elisa Valerio*

15   *Espinoza et al., Plaintiffs, v. West Coast Tomato Growers, LLC et al., Defendants*,

16   Case No. 14cv2984-JLS (KSC) filed on December 19, 2014 (the "*Valerio Espinoza*

17   Case").  The *Rincon* Case and the *Valerio Espinoza* Case are collectively referred to

18   herein as "the Related Actions."   This Settlement resolves Plaintiffs' individual

19   claims in the *Rincon* Case and the *Valerio Espinoza* Case, as well as the California

20   Private Attorneys General Act ("PAGA") claims in each case filed on behalf of all

21   PAGA Members whom the Plaintiffs purport to represent in the Actions.

22   **1.      THE CONDITIONAL NATURE OF THIS STIPULATION.**

23          1.1     This Stipulation and all associated exhibits or attachments, which

24   supersede any and all prior memoranda of understanding or proposals, are made for

25   the sole purpose of settling the above-captioned Actions.  This Stipulation and the

26   settlement it evidences are made in compromise of disputed claims.  Because the

27   Actions were each pled as a Labor Code Private Attorneys General Act

28   representative action, this Settlement must receive approval by the Court.

1    Accordingly, the Parties enter into this Stipulation on a conditional basis.  If the

2    Court does not enter an Order of Approval and/or the proposed Judgment does not

3    become final for any reason, then this Stipulation shall be deemed null and void *ab*

4    *initio*; it shall be of no force or effect whatsoever; it shall not be referred to or

5    utilized for any purpose whatsoever; and the negotiation, terms and entry of the

6    Stipulation shall remain subject to the provisions of California Evidence Code §§

7    1119 and 1152, Federal Rules of Evidence Rule 408, and any other analogous rules

8    of evidence that are applicable.

9         1.2    Defendants deny all claims as to liability, damages, penalties, interest,

10   fees, restitution, injunctive relief, and all other forms of relief as well the PAGA

11   allegations asserted in the Actions, as those terms are defined in Section 2.

12   Defendants have agreed to resolve the Actions via this Stipulation, but to the extent

13   this Stipulation is deemed void or Court approval does not occur, Defendants do not

14   waive, but rather expressly reserve, all rights to challenge all such claims and

15   allegations in the Actions upon all procedural and factual grounds.  Plaintiffs agree

16   that Defendants retain and reserve these rights, and agree not to argue or present

17   any argument, and hereby waive any argument that, based on this Stipulation,

18   Defendants cannot assert any and all potential defenses and privileges if the Actions

19   were to proceed.

20        1.3    Plaintiffs assert that Defendants each bear responsibility for the causes

21   alleged in this action but have agreed to resolve the Actions and claims therein via

22   this Stipulation, but to the extent this Stipulation is deemed void or Court approval

23   does not occur, Plaintiffs do not waive, but rather expressly reserve, all rights to

24   assert all such claims and allegations in the Actions against Defendants.

25   Defendants agree that Plaintiffs retain and reserve these rights and agree not to

26   argue or present any argument, and hereby waive any argument that, based on this

27   Stipulation, Plaintiffs cannot assert any and all claims alleged in the Actions if the

28   Actions were to proceed.

## 2.    DEFINITIONS.

The following terms, when used in this Stipulation, shall have the following meanings:

2.1    "Claims Period" means the one year period following mailing by the Settlement Administrator of the Notice Letter and Claim Form to the PAGA Members during which time the PAGA Members must submit a Claim Form in order to receive a Settlement payment.

2.2    "Complaints" mean the operative First Amended Complaint filed by Plaintiffs in the *Valerio Espinoza* Case on or about March 27, 2015, and the operative Second Amended Complaint filed by Plaintiffs in the *Rincon* Case on or about May 6, 2015.

2.3    "Court" refers to the U.S. District Court, Southern District of California.

2.4    "Covered Period" with regard to PAGA Members in the *Rincon* Case means the period from September 12, 2012, through and including the Effective Date; and with regard to PAGA Members in the *Espinoza Valerio* Case who are not also encompassed by the *Rincon* Case, the period from December 4, 2013, through and including the Effective Date.

2.5    "Defense Counsel" refers to attorneys Julie A. Vogelzang and Lisa Hird Chung of Schor Vogelzang LLP and to attorney William Moore of The Moore Firm.

2.6    "Effective Date" will be the earlier of (1) December 31, 2017; or (2) the date the Court signs the order granting approval of the Settlement, the final judgment date, or if a timely appeal is filed, the date of final resolution of that appeal (including any requests for rehearing and/or petitions for certiorari) resulting in final judicial approval of the Settlement.

2.7    "Eligible Pay Period" means a pay period during which a PAGA Member performed any work during the Covered Period.

1    2.8    "Eligible Wages Pay Period" means a pay period during which a

2    PAGA Member performed any work during the three years prior to the filing of the

3    applicable LWDA Notice, and extending through the Effective Date, which

4    includes pay periods commencing with September 12, 2010, for Field Workers and

5    commencing December 4, 2011, for Packers and Sorters, as determined by the Job

6    Designation of the PAGA Member.

7    2.9    "Field Worker" means a non-exempt employee of any Defendant

8    whose job title is classified by Defendant as a field employee in its field operations,

9    as determined by the Job Designation of the PAGA Member.

10    2.10    "Gross Settlement Amount" is the sum of One Million Dollars and No

11    Cents ($1,000,000.00), which represents an all-in, maximum amount payable in this

12    Settlement by Defendants and includes, without limitation, Settlement

13    Administration Costs, the Individual Plaintiff Payments to each of the Plaintiffs,

14    payment to the Labor and Workforce Development Agency ("LWDA") under

15    PAGA, Settlement Payments to all PAGA Members, penalties, interest, and PAGA

16    Counsel's approved attorneys' fees and costs arising from the Actions.  Defendants

17    shall not be required to make any payment in excess of the Gross Settlement

18    Amount for any cause or reason.

19    2.11    "Job Designation" means the primary job title of the PAGA Member

20    during his or her employment with Defendant(s).

21    2.12    "Individual Plaintiff Payment" means the portion of the Gross

22    Settlement Amount paid to each of the ten Plaintiffs to settle his or her individual

23    claims in the Related Actions.

24    2.13    "LWDA" means California's Labor and Workforce Development

25    Agency.

26    2.14    "LWDA Notices" means the notice letter(s) submitted by one or more

27    Plaintiffs to the LWDA pursuant to California Labor Code section 2699.3 in

28    connection with the *Valerio Espinoza* Case or the *Rincon* Case.

1    2.15   "Net Settlement Amount" is the portion of the Gross Settlement

2    Amount available for distribution to PAGA Members and the LWDA after

3    deduction of:  (1) the award of attorneys' fees and costs to PAGA Counsel; (2) the

4    Individual Plaintiff Payments to Plaintiffs; and (3) Settlement Administration Costs

5    to the Settlement Administrator.  In other words, the Net Settlement Amount is that

6    portion of the Gross Settlement Amount that will be available to PAGA Members

7    and the LWDA.  The Net Settlement Amount includes penalties in the form of

8    alleged underpaid wages as provided in Labor Code §§ 558 and 1197.1 representing

9    the Wage Penalty alleged to be due under those sections, 100% to be awarded to the

10   Participating PAGA Members as provided in Labor Code § 558(a)(1) and (2) and

11   Labor Code § 1197.1(a)(3).  The Net Settlement Amount also includes Twenty

12   Thousand Dollars ($20,000) representing all other civil penalties alleged to be due,

13   consisting of the PAGA Penalties, which are to be split between the LWDA and the

14   PAGA Members, with 75% going to the LWDA and 25% going to the PAGA

15   Members per Labor Code section 2699(i).

16   2.16   "Packer" means an employee of any Defendant whose job title is

17   classified by Defendant as a tomato packer in its packing shed operations.

18   2.17   "PAGA" means the California Labor Code Private Attorneys General

19   Act of 2004, codified at California Labor Code §§ 2698 *et seq.*

20   2.18   "PAGA Claims" shall mean all claims for penalties, including but not

21   limited to those penalties calculated based on the amount of the underpaid wages

22   paid as a Wage Penalty—pursuant to Labor Code § 1197.1 and Labor Code §

23   558—alleged to be due to Plaintiffs and other PAGA Members.

24   2.19   "PAGA Counsel" refers to attorneys Cynthia Rice, Michael Meuter,

25   and Jennifer C. Bonilla of California Rural Legal Assistance, Inc.

26   2.20   "PAGA Members" (or individually "PAGA Member") is defined as all

27   current and former non-exempt Field Workers, Packers, and Sorters employed by

28   one or more Defendants at any time during the Covered Period who received a

1    paycheck, including Plaintiffs.

2         2.21   "PAGA Penalties" means the portion of the Net Settlement Amount

3    received by PAGA Members pursuant to this Settlement Agreement, 75% of which

4    will be paid to the LWDA and 25% of which will be paid to PAGA Members.

5    PAGA Penalties do not include Individual Plaintiff Payments.

6         2.22   "Participating PAGA Members" is defined as all PAGA Members who

7    file a Claim Form within the Claims Period as defined under the terms of this

8    Settlement Agreement and Plaintiffs.

9         2.23   "Plaintiffs" refers to individuals Santiago Bautista, Guillermina

10   Bermudez, Felix Gomez Diaz, Maria Martinez, Lorenzo Lopez Pastrana, Rufino

11   Zafra, Serafin Rincon, Arturo Salgado Manzano, Cipriano Capistran, and Elisa

12   Valerio Espinoza who are named plaintiffs in the *Rincon* Case or the *Valerio*

13   *Espinoza* Case.  Plaintiffs are automatically deemed to be PAGA Members.

14        2.24   "Qualified Settlement Fund" or "QSF" means a fund within the

15   meaning of Treasury Regulation § 1.468B-1, 26 CFR § 1.468B-1 *et seq.*, that is

16   established by the Settlement Administrator for the benefit of PAGA Members.

17        2.25   "Related Actions" refer to the two civil actions filed separately in the

18   United States District Court, Southern District of California, the first entitled

19   *Serafin Rincon et al., Plaintiffs v. West Coast Tomato Growers, LLC, a California*

20   *Limited Liability Company, et al., Defendants*, Case No. 13cv2473-JLS (KSC)

21   (filed Sept. 10, 2013), and the second entitled *Elisa Valerio Espinoza et al.,*

22   *Plaintiffs, v. West Coast Tomato Growers, LLC, a California Limited Liability*

23   *Company, et al., Defendants*, Case No. 14cv2984-JLS (KSC) (filed Dec. 19, 2014),

24   including the LWDA Notices submitted by Plaintiffs in the Related Actions.

25        2.26   "Released Claims" means any and all claims, rights, demands,

26   liabilities and causes of action of any nature or description arising from, or that

27   reasonably could have been pleaded based on, the facts as pled in the Related

28   Actions.  The claims released under this Settlement ("Released Claims") shall

include PAGA Claims for unpaid minimum and overtime wages, failure to pay contracted wage rate, failure to pay wages at the Adverse Effect Wage Rate for all hours worked (20 C.F.R. §§ 655.210 and 655.122), failure to provide meal and/or rest periods or premium payments in lieu thereof, untimely payment of wages, inaccurate wage statements, record keeping violations, failure to pay all wages owed upon termination, failure to indemnify for business expenditures, violation of the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. §§ 1801 *et seq.* and 29 C.F.R. §§ 500 *et seq.*), violation of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*), failure to comply with posting requirements, failure to maintain minimum health and safety requirements, unfair competition, as well as any and all damages, underpaid wages, restitution, disgorgement, civil penalties, statutory penalties, taxes, interest, attorneys' fees or costs resulting therefrom. The Released Claims shall extend to the Effective Date. Releases by PAGA Members, with the exception of Plaintiffs, shall be limited to PAGA Claims asserted or that reasonably could have been alleged based on the facts in the LWDA Notices and Related Actions. The Parties acknowledge that under this release, the right of the LWDA to investigate the released PAGA claims is not released, but Released Claims do include any claims for penalties by a PAGA Member as a result of any such LWDA investigation.

2.27   "Releasees" shall mean Defendants and their past, present and/or future parents, subsidiaries and affiliated corporations and entities, and all of their current and former officers, directors, members, managers, employees, consultants, operators, partners, shareholders, joint ventures, agents, successors, assigns or legal representatives.

2.28   "Settlement Administrator" shall refer to Phoenix Class Action.

2.29   "Settlement Administration Costs" means the fees and expenses reasonably incurred by the Settlement Administrator as a result of the procedures and processes expressly required by this Stipulation.

1    2.30   "Settlement Agreement," "Settlement" or "Stipulation" means this

2  Joint Stipulation of Settlement and Release.

3    2.31   "Settlement Payment" means the amount to be paid to each individual

4  PAGA Member under this Settlement.

5    2.32   "Sorter" means an employee of any Defendant whose job title is

6  classified by Defendant as a tomato sorter in its packing shed operations.

7    2.33   "Wage Penalty" means the amount of allegedly underpaid wages paid

8  pursuant to Labor Code §§ 558 and/or 1197.1 encompassing the three years prior to

9  the filing of the applicable LWDA Notice, and extending through the Effective

10  Date which includes pay periods commencing with September 12, 2010, for Field

11  Workers and commencing December 4, 2011, for Packers and Sorters.

12    2.34   "WCTG" means defendant West Coast Tomato Growers, LLC.

13  **3.    DESCRIPTION OF THE LITIGATION.**

14    3.1   On or about July 17, 2014, three of the seven plaintiffs named in the

15  *Valerio Espinoza* Case (i.e., Lorenzo Lopez Pastrana and Arturo Salgado Manzano)

16  sent a letter to the LWDA, the California Division of Occupational Safety & Health

17  ("DOSH"), and Defendant WCTG giving notice of their intent to pursue a

18  representative action pursuant to PAGA on behalf of themselves and the State of

19  California as well as on behalf of a proposed group of aggrieved employees.

20    3.2   On or about December 4, 2014, four of the seven plaintiffs named in

21  the *Valerio Espinoza* Case (i.e., Guillermina Bermudez, Felix Gomez Diaz, Maria

22  Martinez, and Elisa Valerio Espinoza) sent a letter to the LWDA, DOSH, and

23  Defendant WCTG giving notice of their intent to pursue a representative action

24  pursuant to PAGA on behalf of themselves and the State of California as well as on

25  behalf of a proposed group of aggrieved employees.

26    3.3   On or about September 12, 2013, the three plaintiffs named in the

27  *Rincon* Case (i.e., Santiago Bautista, Serafin Rincon, and Rufino Zafra) sent a letter

28  to the LWDA, DOSH, and Defendants giving notice of their intent to pursue a

1  representative action pursuant to PAGA on behalf of themselves and the State of

2  California as well as on behalf of a proposed group of aggrieved employees.

3      3.4    The operative First Amended Complaint in the *Valerio Espinoza* Case,

4  which was filed on March 27, 2015, asserts the following individual or

5  representative causes of action:  (1) wrongful discharge in violation of public policy

6  [by individuals Valerio Espinoza, Bermudez, and Gomez only]; (2) failure to pay

7  wages at Adverse Effect Wage Rate ("AEWR") per federal law [by all plaintiffs

8  individually]; (3) failure to pay all wages due [by all plaintiffs individually]; (4)

9  failure to pay minimum wages for all hours worked [by all plaintiffs individually];

10  (5) failure to pay overtime wages [by all plaintiffs individually]; (6) failure to pay

11  all wages due upon termination of employment [by all plaintiffs individually]; (7)

12  failure to indemnify for necessary expenditures [by all plaintiffs individually]; (8)

13  failure to provide meal periods [by individuals Lopez, Salgado, and Capistran]; (9)

14  knowing and intentional failure to provide accurate and complete itemized wage

15  statements [by all plaintiffs individually]; (10) violation of the Migrant and

16  Seasonal Agricultural Worker Protection Act ("AWPA") for failure to pay wages

17  when due, failure to comply with posting requirements, failure to maintain

18  minimum health and safety requirements, and noncompliant record keeping [by

19  individuals Lopez, Salgado, and Capistran]; (11) unlawful competition [by all

20  plaintiffs individually]; and (12) enforcement of civil penalties under PAGA based

21  on various alleged Labor Code wage and hour and health and safety violations.

22      3.5    The operative Second Amended Complaint in the *Rincon* Case, which

23  was filed on May 6, 2015, asserts claims akin to those alleged in the *Valerio*

24  *Espinoza* Case for an overlapping group of allegedly aggrieved employees.

25  Specifically, the *Rincon* Case involves the following individual or representative

26  causes of action:  (1) age discrimination [by individual Rincon]; (2) wrongful

27  discharge in violation of public policy [by individual Rincon only]; (3) failure to

28  pay contractual wages [by all plaintiffs individually]; (4) failure to pay wages at

1   AEWR [by all plaintiffs individually]; (5) failure to pay minimum wages for all

2   hours worked [by all plaintiffs individually]; (6) failure to pay overtime wages [by

3   all plaintiffs individually]; (7) failure to pay all wages due upon termination of

4   employment [by all plaintiffs individually]; (8) failure to indemnify for necessary

5   expenditures [by all plaintiffs individually]; (9) failure to provide meal periods [by

6   all plaintiffs individually]; (10) knowing and intentional failure to provide accurate

7   and complete itemized wage statements [by all plaintiffs individually]; (11)

8   violation of the AWPA for failure to pay wages when due, failure to comply with

9   posting requirements, failure to maintain minimum health and safety requirements,

10  and noncompliant record keeping [by all plaintiffs individually]; (12) unlawful

11  competition [by all plaintiffs individually]; and (13) enforcement of civil penalties

12  under PAGA based on various alleged Labor Code wage and hour and health and

13  safety violations.

14      3.6    Extensive discovery and motion practice spanned several years.  Each

15  of the Parties evaluated the Related Actions based in part on formal written

16  discovery responses, legal research and analysis, more than a three dozen

17  depositions, input from expert witnesses, defendant WCTG's motions for summary

18  judgment in each case, Plaintiffs' opposition to WCTG's motions, and the Court's

19  rulings in each motion.  Defendants provided thousands of documents to Plaintiffs,

20  including copies of all applicable policies and detailed payroll and timekeeping data

21  for almost all PAGA Members.  Each of the Parties separately analyzed the data.

22      3.7    On May 12, 2017, the Parties voluntarily participated in a lengthy

23  mediation with mediator Denise Asher.  The Parties reached an agreement to

24  simultaneously settle both the *Rincon* Case and *Valerio Espinoza* Case, which is the

25  basis of this current Settlement.  The complete terms of the Parties' settlement are

26  contained within this Stipulation.  At all times, the Parties' settlement negotiations

27  have been non-collusive, adversarial and at arm's length.

28      3.8    Discussions between counsel for the Parties, extensive legal analysis,

1  the provision of information by Defendants to Plaintiffs, as well as the investigation

2  and evaluation of the claims of Plaintiffs by the Parties, have permitted each side to

3  assess the relative merits of the claims and the defenses in the Actions.

4      3.9    Defendants deny any liability or wrongdoing of any kind associated

5  with the claims alleged in the Related Actions, deny liability for the Released

6  Claims, and further deny that the Related Actions are appropriate for representative

7  treatment for any purpose other than settling the Related Actions.  Defendants

8  contend, among other things, that it has complied at all times with the California

9  Labor Code, the Industrial Welfare Commission Wage Orders, the California

10  Business & Professions Code, the Migrant and Seasonal Agricultural Worker

11  Protection Act, the Fair Labor Standards Act, and all other state and federal wage

12  laws, and further contend that all of their respective employees were and are paid

13  properly and that the Related Actions are without merit.  Defendants have denied

14  and continue to deny each and every material factual allegation and alleged claim

15  asserted against them in the Related Actions.

16      3.10   Neither the existence of this Settlement nor anything contained in this

17  Settlement shall be construed or deemed as an admission of liability, culpability,

18  negligence, or wrongdoing on the part of Defendants.  Nothing herein shall

19  constitute an admission by Defendants that the Actions were properly brought as a

20  representative action other than for settlement purposes.  Settlement of the Actions,

21  the negotiation and execution of this Settlement, and all acts performed or

22  documents executed pursuant to or in furtherance of this Settlement or the

23  settlement of the Actions: (a) are not, shall not be deemed to be, and may not be

24  used as, an admission or evidence of any wrongdoing or liability on the part of any

25  of the Defendants or of the truth of any of the factual allegations in the Complaints

26  in the Actions; (b) are not, shall not be deemed to be, and may not be used as, an

27  admission or evidence of any fault or omissions on the part of Defendants in any

28  civil, criminal, or administrative proceeding in any court, administrative agency or

1   other tribunal; (c) are not, shall not be deemed to be, and may not be used as, an

2   admission or evidence of the appropriateness of these or similar claims for

3   representative treatment, class certification or administration other than for

4   purposes of administering this Settlement; and (d) shall not constitute or be deemed

5   a waiver of Defendants' rights to compel arbitration of any dispute with PAGA

6   Members that is not the subject of the releases in the Settlement.

7        3.11   The Parties recognize that the issues presented in the Related Actions

8   are likely only to be resolved with extensive and costly pretrial and trial

9   proceedings, and that further litigation will cause inconvenience, distraction,

10  disruption, delay and expense disproportionate to the potential benefits of litigation.

11  The Parties have taken into account the risk and uncertainty of the outcome inherent

12  in any litigation.

13       3.12   Plaintiffs and PAGA Counsel have diligently pursued an investigation

14  of the Plaintiffs and PAGA Members' claims against Defendants.

15       3.13   Based on their own independent investigations and evaluations,

16  Defendants and Plaintiffs and their respective counsel are of the opinion that the

17  Settlement for the consideration and on the terms set forth in this Stipulation is fair,

18  reasonable and adequate and is in the best interests of Plaintiffs, the PAGA

19  Members and Defendants in light of all known facts and circumstances and the

20  risks inherent in litigation, including the potential appellate issues.  Further, PAGA

21  Counsel believes that the settlement amount entered into is in the best interests of

22  the PAGA Members who are anticipated to participate and that the settlement for

23  each PAGA Member is fair, reasonable and adequate, given the inherent risk of

24  litigation.

25       3.14   The purpose of this Settlement is to settle and compromise the Related

26  Actions and all Released Claims.

27       3.15   The Parties agree that upon full execution of this Settlement, the

28  Related Actions are each stayed in their entirety save for any filings and motion

1   work necessary to attain Court approval of the Settlement.  Should the Court not

2   grant approval of this Settlement, the stay will be lifted five (5) days thereafter, the

3   Parties will be restored to their positions prior to the Settlement, and the Settlement

4   shall be null and void.

5   **4.      OPERATIVE TERMS OF SETTLEMENT.**

6          In consideration of the mutual covenants, promises and representations set

7   forth in this Settlement, Plaintiffs and Defendants agree to settle and compromise

8   the Related Actions, the Released Claims, the Plaintiffs' individual claims, and

9   Plaintiffs' PAGA Claims brought on behalf of themselves, the State of California

10  and all PAGA Members, subject to the terms and conditions set forth in this

11  Settlement.

12         4.1     This is an all-in and all-inclusive cash settlement.  PAGA Members

13  shall be provided notice and an opportunity to submit a claim upon approval of the

14  Court pursuant to the remaining terms herein.

15         4.2     <u>Gross Settlement Amount</u>.  Defendants agree to pay an amount not to

16  exceed One Million Dollars ($1,000,000.00) as the Gross Settlement Amount to

17  resolve the Related Actions on an individual and PAGA-wide basis.  Said sum

18  includes:  (1) Settlement Administration Costs, estimated to be up to $30,000; (2)

19  reasonable fees and costs to PAGA Counsel as approved by the Court of up to

20  $150,000, including $39,485.99 in expenses, guaranteed fees of $60,504.01, and a

21  possible additional distribution of up to $50,000 only in the event that there are

22  funds left in the PAGA Members fund after all Participating PAGA Members have

23  been fully paid 100% of the PAGA Penalties and Wages Penalties according to the

24  provisions and formula in 4.8.6(d), 8.4.1, and 8.5, for which PAGA Counsel shall

25  receive an IRS 1099 form; (3) Individual Plaintiff Payments in the collective

26  amount of Two Hundred and Fifty Five Thousand Dollars ($255,000.00); and (4)

27  the Net Settlement Amount to be paid to the Participating PAGA Members who

28  file a claim within the Claims Period set forth in the Settlement Agreement and to

1    the LWDA.

2        4.3    As Individual Plaintiff Payments, Defendants will pay Plaintiffs the

3    following sums in the total amount of $255,000.00 as follows:  Serafin Rincon,

4    $56,300.00; Santiago Bautista, $29,100.00; Rufino Zafra, $9,400.00; Felix Gomez

5    Diaz, $31,600.00; Maria Martinez, $7,200.00; Lorenzo Lopez Pastrana,

6    $19,700.00; Cipriano Capistran, $18,800.00; Elisa Valerio Espinoza, $31,600.00;

7    Guillermina Bermudez, $31,600.00; and Arturo Salgado Manzano, $19,700.00.

8        4.4    <u>Net Settlement Amount Distribution</u>.  The Net Settlement Amount

9    shall be apportioned in the following manner:  $20,000 shall be attributed to

10   PAGA Penalties and paid to the LWDA and Participating PAGA Members, which

11   shall be distributed with 75% going to the LWDA and 25% going to PAGA

12   Members.  The remainder of the Net Settlement Amount shall first be distributed

13   to Participating PAGA Members in an amount not exceeding the Wage Penalty

14   calculated to be due to the Participating PAGA Members.  In the event that the

15   remainder of the Net Settlement Amount is not sufficient to pay all Wage Penalties

16   calculated to be due to the Participating PAGA Members, the remainder will be

17   distributed pro rata to the Participating PAGA Members.

18       4.5    Any funds not distributed after payment of the Wage Penalty shall be

19   paid as follows: up to 25% of the unpaid amount shall be paid to PAGA Counsel

20   as additional attorneys' fees, however, such amount shall in no event exceed

21   $50,000.  The rest shall be paid pursuant to the PAGA Penalties formula and

22   distributed with 75% going to the LWDA and 25% to the Participating PAGA

23   Members.

24       4.6    To the extent Settlement Administration Costs or fees or costs to

25   PAGA Counsel are lower than those specified in this Settlement, the difference

26   will be allocated to the Net Settlement Amount.  If Settlement Administration

27   Costs exceed the amount set forth in this Stipulation, the Parties will seek approval

28   for the additional amount to be paid from the Gross Settlement Amount, and any

1   such costs denied by the Court will be split equally between the Parties.

2       4.7   <u>Installments</u>.  The Gross Settlement Amount will be paid by

3   Defendants in three installments:

4         (a)   $250,000.00 (25% of the Gross Settlement Amount) on or

5   before December 31, 2017;

6         (b)   $375,000.00 (37.5% of the Gross Settlement Amount) on or

7   before December 31, 2018; and

8         (c)   $375,000.00 (37.5% of the Gross Settlement Amount) on or

9   before December 31, 2019.

10       4.8   <u>Allocation of Net Settlement Amount</u>.  Each Participating PAGA

11   Member shall receive a pro-rata portion of the Net Settlement Amount.  The Net

12   Settlement Amount shall be distributed in the Second and Third Installment

13   Portions, as set forth in Paragraphs 8.4 and 8.5 and their subsections of this

14   Stipulation.

15       4.8.1  A list of eligible PAGA Members and their last contact

16   information and taxpayer I.D. information or social security number, Job

17   Designation, and other information in accordance with the Database defined in

18   Paragraph 8.1 shall be provided by Defendants to the Settlement Administrator by

19   no later than thirty (30) calendar days after approval by the Court of the Settlement.

20   Notice in the form attached hereto as **Exhibit 1** shall be mailed to each PAGA

21   Member advising them of the right to participate in the PAGA Settlement and of

22   the Covered Period and providing them with a copy of the Claim Form attached

23   hereto as **Exhibit 2**.  Such Notice Letter and Claim Form shall be in English and

24   Spanish.

25       4.8.2  PAGA Members shall have a period of one year from the date of

26   mailing by the Settlement Administrator of the Notice Letter and Claim Form to the

27   PAGA Members to submit a valid Claim Form to the Settlement Administrator.

28   The Net Settlement Amount shall be distributed as follows:

4.8.3  First, the Settlement Administrator will allocate $20,000 of the Net Settlement Amount as the PAGA Penalties amount under the terms of this Settlement Agreement, 75% of which shall be paid to the LWDA and 25% of which shall be paid to Participating PAGA Members.

4.8.4  Second, the Settlement Administrator will calculate the total number of Eligible Pay Periods worked by each Participating PAGA Member during the Covered Period in the *Rincon* Case, and then separately calculate the total number of Eligible Pay Periods worked by each Participating PAGA Member during the different Covered Period in the *Valerio Espinoza* Case.  Each Eligible Pay Period will identify the Participating PAGA Member's job designation.  For PAGA Members who are eligible for payments under both the *Rincon* Case and the *Valerio Espinoza* Case, the Settlement Administrator will compare whether the PAGA Member worked a greater number of Eligible Pay Periods during the *Rincon* Case Covered Period or the *Valerio Espinoza* Case Covered Period, and apply the greater of these two numbers to that PAGA Member.  Accordingly, each PAGA Member will have <u>one</u> Eligible Pay Periods number.

4.8.5  Third, the number of Eligible Pay Periods for all Participating PAGA Members will be added together to reflect the "Total Eligible Pay Periods." The Net Settlement Amount will be divided by the Total Eligible Pay Periods to determine a "Pay Period Amount."

4.8.6  Fourth, for each Participating PAGA Member, the "Wage Penalty" amount under Labor Code sections 558 and 1197.1 shall be calculated as follows:

(a) Field Workers.   The number of Eligible Wages Pay Periods worked by the individual PAGA Member multiplied by the amount of $277.69 for Eligible Wages Pay Periods in the year 2010, $388.32 for Eligible Wages Pay Periods in the year 2012, $395.90 for Eligible Wages Pay Periods in the year 2013, $409.23 for Eligible Wages Pay

Periods in the year 2014, $426.96 for Eligible Wages Pay Periods in the year 2015, $461.31 for Eligible Wages Pay Periods in the year 2016, and $503.40 for Eligible Wages Pay Periods in the year 2017. The resulting number is the Wage Penalty for Field Workers.

(b) Packers.  The number of Eligible Wages Pay Periods worked by the individual PAGA Member multiplied by the amount of $58.34 for Eligible Wages Pay Periods in the year 2012, $69.67 for Eligible Wages Pay Periods in the year 2013, $68.36 for Eligible Wages Pay Periods in the year 2014, $70.48 for Eligible Wages Pay Periods in the year 2015, $75.89 for Eligible Wages Pay Periods in the year 2016, and $83.05 for Eligible Wages Pay Periods in the year 2017.  In addition to the weekly amounts to be paid, Packers shall be paid a flat amount for each year in which the Packer has an Eligible Wages Pay Period.   Those amounts are set as follows:  $36.72 in the year 2012, $37.48 in the year 2013, $40.02 in the year 2014, $40.66 in the year 2015, $43.78 in the year 2016, and $46.14 in the year 2017.  The resulting number combining the weekly amount and the flat rate amount is the Wage Penalty for Packers.

(c) Sorters.  Sorters shall be paid a flat amount for each year in which the Sorter has an Eligible Wages Pay Period.   Those amounts are set as follows:  $36.72 in the year 2012, $37.48 in the year 2013, $40.02 in the year 2014, $40.66 in the year 2015, $43.78 in the year 2016, and $46.14 in the year 2017.  The resulting number is the Wage Penalty for Sorters.

(d) The Settlement Administrator shall then determine whether the Net Settlement Amount, after being reduced by the $20,000 PAGA Penalty allocation described in 4.8.3, is a sufficient amount to allow for distribution of the Wage Penalties to all Participating PAGA Members.

18 of 35

If it is, those amounts will be credited to each Participating PAGA Member.  Any amount remaining after allocation of the Wage Penalties to the Participating PAGA Members shall be allocated pro rata to the Participating PAGA Members.   Fifty percent (50%) of any amount remaining after allocation of the Wage Penalty to the Participating PAGA Members shall be allocated pro rata to the Participating PAGA Members. Twenty-five percent (25%) of any amount remaining after allocation of the Wage Penalty to the Participating PAGA Members, but in no event an amount greater than $50,000, shall be allocated to PAGA Counsel as further attorneys' fees and costs; the greater of 25% or any amount remaining after the pro rata distribution and payment of attorneys' fees shall be included as part of the PAGA Penalty fund to be distributed pursuant to section 4.5.

4.8.7  Finally, the PAGA Members' 25% share of $20,000 in PAGA Penalties as provided in section 4.8.3, plus the unclaimed amounts allocated to the PAGA Penalty fund in section 4. 8.6(d), shall be added together and divided by the Total Eligible Pay Periods Amount to arrive at the "PAGA Penalties Workweek Amount." The PAGA Penalties Workweek Amount will be calculated for each Participating PAGA Member by multiplying the PAGA Penalties Workweek Amount by the number of Eligible Pay Periods worked by that Participating PAGA Member.  75% of each PAGA Penalty Workweek Amount will be paid to the LWDA as is required by PAGA; the remaining amount, which is 25% of the PAGA Penalty, shall be paid through an IRS Form 1099 to the Participating PAGA Member as described below.

4.9   Fair Formula.  The Parties recognize and agree that the precise value of each PAGA Penalty is difficult to determine with any certainty for any given person, or at all, and is subject to myriad differing calculations and formulas.  The

Parties hereby agree that the formula for allocating payments as provided herein is reasonable and designed to provide a fair settlement to Participating PAGA Members.

4.10   <u>PAGA Counsels' Fees and Costs</u>.  As part of the request for approval of this Settlement, PAGA Counsel will request Court approval of an initial allocation of 10 % of the Gross Settlement Amount, which is $60,504.01 for guaranteed fees and $39,485.99 for cost reimbursement.  In the event that there is not full participation by all PAGA Members and funds are allocated to PAGA Counsel in accordance with section 4.8.5, an additional amount of up to $50,000 may be distributed to PAGA counsel bringing the total percentage of fees and costs up to 15% of the Gross Settlement Amount.  Should PAGA Counsel request, or be awarded, a lesser amount for attorneys' fees and costs, the difference shall be added to the Net Settlement Amount to be divided by PAGA Members as provided in section 4.8.6.  Any attorneys' fees and costs awarded to PAGA Counsel shall fully compensate and reimburse PAGA Counsel for any and all of the work already performed in connection with the Related Actions and all work remaining to be performed in fully and finally resolving the Related Actions.

4.11   <u>Tax Treatment of Settlement Payments</u>.

4.11.1   The Parties agree that the Wage Penalties and PAGA Penalties paid to PAGA Members and the LWDA will be characterized 100% as penalties with no tax withholdings.  Defendants will issue an IRS Form 1099 for the portion of each PAGA Penalty paid directly to PAGA Members after deducting the LWDA's 75% share.

4.11.2   The Parties agree that the Individual Plaintiff Payments to the named Plaintiffs will be characterized as follows:  (i)  one-quarter of the Individual Plaintiff Payment shall be allocated for payment of disputed wages, and for this portion of the Individual Plaintiff Payment, each Plaintiff shall receive an IRS W-2 form;  (ii)  one-half of the Individual Plaintiff Payment shall be allocated

for disputed penalties, and this portion of the Individual Plaintiff Payment consists of other damages and income, not wages, for which each Plaintiff shall receive an IRS 1099 form; and (iii)  one-quarter of the Individual Plaintiff Payment shall be allocated for interest, and this portion of the Individual Plaintiff Payment consists of other income, not wages, for which each Plaintiff shall receive an IRS 1099 form.

4.12   <u>No Tax Representations</u>.  Nothing in this Settlement is intended to constitute legal advice regarding federal, state and/or local tax obligations. Plaintiffs acknowledge that they have obtained no tax advice from Defendants, and that neither Defendants nor their attorneys have made any representation concerning the tax consequences, if any, arising from this Settlement.  To the extent that this Settlement or any of its attachments is interpreted to contain or constitute advice regarding any tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding penalties under the Internal Revenue Code.  Defendants are not responsible for any employee tax obligations regarding the allocation of the Settlement payments. Payment of PAGA Counsel's fees and costs will be reflected in a Form 1099 to PAGA Counsel, who shall assume full responsibility and liability for the payment of taxes due on such payments.

**5.    CHANGES IN POLICIES AND PRACTICES.**

5.1    As a material term of this Settlement, the Parties have agreed on certain changes in defendant WCTG's current employee-related policies, procedures and practices, as set forth in **Exhibit 3** to this Stipulation ("New Practices").  WCTG agrees to proceed in good faith to implement all of the New Practices on or before May 1, 2018, or as specifically delineated in **Exhibit 3**.

5.2    On or before June 1, 2018, Defense Counsel will notify PAGA Counsel in writing as to the implementation status of each of the New Practices. Defense Counsel and PAGA Counsel will meet and confer regarding any New

1  Practices not implemented by this date.  Impossibility of performance and/or a

2  conflicting statute, ordinance or regulation will absolve WCTG from implementing

3  a New Practice, upon prompt written notice to PAGA Counsel.  The Parties agree

4  that any edits, deletions or additions to **Exhibit 3** shall be made mutually by the

5  Parties in writing without seeking Court approval.

6  **6.      RELEASE OF CLAIMS.**

7        6.1     Release by Each and All PAGA Members, Including Plaintiffs.  This

8  Settlement shall result in the release by each and all PAGA Members, including

9  Plaintiffs, of all Released Claims.

10        6.2     Release by Each and All Plaintiffs.  In order to obtain the Individual

11  Plaintiff Payment, each of the Plaintiffs on an individual basis (and not on behalf

12  of any PAGA Members) hereby agrees to release, acquit and discharge Releasees

13  from any and all employment-related claims against Releasees of any kind

14  whatsoever (upon any legal or equitable theory whether contractual, common law,

15  constitutional, statutory, federal, state, local or otherwise), whether known or

16  unknown, that arose, accrued or took place at any time on or prior to the date on

17  which this Stipulation is executed.  Each Plaintiff expressly waives the benefit of

18  Section 1542 of the California Civil Code which states:

19        A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
   THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS

20        OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
   WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY

21        AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR.

22        6.3     Plaintiffs each further agree not to participate in any other class,

23  representative or collective actions against any Releasees based on actions or

24  occurrences that took place at any time prior to Court approval of this Settlement

25  Agreement.  If a Plaintiff does not execute this Stipulation, with all of the specific

26  terms required herein, then Defendants shall not be required to make any

27  Individual Plaintiff Payment whatsoever to that Plaintiff.

28

6.4     The Parties agree that they will support approval of this Settlement and agree that they will oppose any request by the LWDA to intervene in the Related Actions, object to the settlement, or otherwise seek disapproval of this Stipulation by the Court.

6.5     This Settlement is not intended to bar any claims that, by law, may not be waived, such as claims for workers' compensation benefits, unemployment insurance benefits, and statutory indemnity.  In addition, this general release does not prevent any Plaintiff or PAGA Member from contacting, providing information to, or filing a charge with any federal, state or local government agency or commission, including but not limited to the Equal Employment Opportunity Commission ("EEOC"), the Securities and Exchange Commission ("SEC") or the National Labor Relations Board ("NLRB").  Participating PAGA Members are prevented, however, to the maximum extent permitted by law, from obtaining any monetary or other personal relief for any of the claims PAGA Members have released in this Stipulation with regard to any charge or claim the Participating PAGA Member may file or which may be filed or otherwise brought on the Participating PAGA Member's behalf.  Nothing in this Stipulation is intended to or shall be interpreted: (i) to restrict or otherwise interfere with any PAGA Member's obligation to testify truthfully in any forum; or (ii) to restrict or otherwise interfere with any PAGA Member's right and/or obligation to contact, cooperate with, provide information to, or participate in any investigation conducted by, any government agency or commission (including but not limited to the EEOC, SEC or NLRB).

7.     **APPROVAL OF STIPULATION.**

7.1     The Parties recognize that in accordance with Labor Code section 2699(l)(2), Court approval is required in the event of any settlement of a PAGA action.  However, as explained in *Arias v. Superior Court* (2009) 46 Cal.4th 969, the Parties are not obligated to follow the class action procedural rules in PAGA

1   cases and therefore need not obtain approval of the PAGA Settlement thorough a

2   motion for primary or final approval.  Instead, in order to comply with the

3   requirements of Labor Code section 2699, Plaintiffs will prepare and the Parties

4   will jointly submit a stipulation to the Court identifying the terms of the Settlement

5   and requesting that the Court approve the Settlement ("Approval Stipulation").

6   The entire Settlement is contingent upon the approval by the Court of the

7   Settlement and shall be void if the Court refuses to sign the proposed order

8   accompanying the Approval Stipulation.

9        7.2    If the Court should fail to approve the Settlement as agreed upon by

10  the Parties, the Parties agree to coordinate efforts to address the Court's questions

11  or concerns and resubmit the Approval Stipulation and proposed order or a noticed

12  motion if required by the Court.  If, after the Parties make a second attempt to

13  obtain approval of the terms of the Settlement, (a) the Court fails to approve this

14  Settlement in the form agreed to by the Parties  (except for the amount of

15  attorneys' fees or costs requested), or (b) the Court's approval of this Settlement is

16  reversed, modified, or declared or rendered void, then (i) this Settlement shall be

17  considered null and void; (ii) neither this Settlement nor any of the related

18  negotiations or proceedings shall be of any force or effect; and (iii) all Parties to

19  this Settlement shall stand in the same position, without prejudice, as if the

20  Settlement had been neither entered into nor filed with the Court.  Invalidation of

21  any material portion of this Settlement, except for the amount of attorneys' fees

22  and costs, shall invalidate this Settlement in its entirety unless the Parties shall

23  subsequently agree in writing that the remaining provisions shall remain in full

24  force and effect.

25  **8.      DISTRIBUTION OF THE SETTLEMENT PROCEEDS.**

26       8.1    Within thirty (30) calendar days after the Court signs an order

27  approving the Settlement, Defendants shall provide to the Settlement

28  Administrator an electronic database, which will list for each PAGA Member that

24 of 35

1  person's (i) first and last name, (ii) last known mailing address, (iii) social security

2  number, (iv) hire and termination dates through the date the Court approves the

3  Stipulation, and (v) Job Designation as a Field Worker, Packer, or Sorter

4  ("Database").  This Database shall be based on the employer's payroll,

5  timekeeping, personnel, and other business records.  The Settlement Administrator

6  shall maintain this Database, and all data contained within this Database, as private

7  and confidential.  The Settlement Administrator may not use the Database for any

8  purpose other than to administer the Settlement as provided herein.

9       8.2    Upon receipt of the Database, the Settlement Administrator shall run

10  all the addresses provided in the Database through the U.S. Postal Service NCOA

11  database (which provides updated addresses for any individual who has moved in

12  the previous four years who has notified the U.S. Postal Service of a forwarding

13  address) to obtain current address information for each PAGA Member.  The

14  Settlement Administrator shall perform a Skip Trace on all returned mail with no

15  forwarding address, and re-mail the Notice Letter and Claim Form within two (2)

16  business days after a different address is located with Skip Trace.

17       8.3    First Installment Payments.

18       8.3.1  Within thirty (30) calendar days after the Court signs an order

19  approving the Settlement or by December 31, 2017, whichever date is later,

20  Defendants shall pay $250,000 (25%) of the Gross Settlement Amount by wiring

21  the funds into a Qualified Settlement Fund set up and controlled by the Settlement

22  Administrator.  This payment shall be allocated to pay Plaintiffs and the Settlement

23  Administrator as follows: Serafin Rincon, $50,780.39; Santiago Bautista,

24  $26,247.06; Rufino Zafra, $8,478.43; Felix Gomez Diaz, $28,501.96; Maria

25  Martinez, $6,494.12; Lorenzo Lopez Pastrana, $17,768.63; Cipriano Capistran,

26  $16,956.86; Elisa Valerio Espinoza, $28,501.96; Guillermina Bermudez,

27  $28,501.96; Arturo Salgado Manzano, $17,768.63; and up to $20,000.00 shall be

28  retained by the Settlement Administrator for Settlement Administration Costs.

1    These payments represent the "First Installment Payments."

2              8.3.2   Within forty-five (45) calendar days after the Court signs an

3    order approving the Settlement or by January 15, 2018, whichever date is later, the

4    Settlement Administrator shall distribute the First Installment Payments as set

5    forth in this Stipulation.

6         8.4    Second Installment Payments.

7              8.4.1   Within 395 calendar days after the Court signs an order

8    approving the Settlement or by December 31, 2018, whichever date is later,

9    Defendants shall pay $375,000 (37.5%) of the Gross Settlement Amount by wiring

10   the funds into a Qualified Settlement Fund set up and controlled by the Settlement

11   Administrator.  This payment shall be allocated to pay the remainder of the

12   Individual Plaintiff Payments up to the amounts set forth in Paragraph 4.3 of this

13   Settlement Agreement.   In addition, $20,000.00 shall be allocated for the

14   distribution of the PAGA Penalties to Participating PAGA Members and the

15   LWDA, as provided in section 4.8 and its subsections of this Stipulation (of this

16   amount, $15,000 will be paid to the LWDA for its 75% share of the PAGA

17   Penalties).  Payment shall be retained according to the Settlement Administrator's

18   payment terms for Settlement Administration Costs.  Further, $100,000 shall be

19   allocated to pay the costs and fees awarded by the Court to PAGA Counsel.

20             8.4.2   Within 410 calendar days after the Court signs an order

21   approving the Settlement or by January 15, 2019, whichever date is later, the

22   Settlement Administrator shall distribute the Second Installment Payments as set

23   forth in this Stipulation.  The Settlement Administrator shall ensure that the

24   LWDA's share of the Second Installment Payment is paid to the LWDA.

25        8.5    Third Installment Payments.

26             8.5.1   Within 760 calendar days after the Court signs an order

27   approving the Settlement or by December 31, 2019, whichever date is later,

28   Defendants shall pay an additional $375,000 (37.5%) of the Gross Settlement

1   Amount by wiring the funds into a Qualified Settlement Fund set up and controlled
2   by the Settlement Administrator.  This payment and all remaining amounts in the
3   Qualified Settlement Fund shall be allocated to pay the remaining PAGA Penalties
4   to Participating PAGA Members and the LWDA as provided in sections 4.8.3
5   through 4.8.7 of this Stipulation, any remaining Settlement Administration Costs,
6   and any additional costs and fees awarded by the Court to PAGA Counsel by
7   operation of section 4.5 and 4.10 of this Stipulation.  These payments represent the
8   "Third Installment Payments".

9          8.5.2  Within 775 calendar days after the Court signs an order
10   approving the Settlement or by January 15, 2020, whichever date is later, the
11   Settlement Administrator shall distribute the Third Installment Payments of the
12   Settlement payments as set forth in this Stipulation.

13      8.6   Settlement Checks to PAGA Members.  The Settlement Administrator
14   will send Settlement Payment checks via U.S. First Class mail to the each
15   Participating PAGA Member's last known address, as indicated on the Claim
16   Form or as updated by the Participating PAGA Member.

17          8.6.1  A letter explaining this Settlement Agreement, which will be
18   approved by the Parties in advance of Plaintiffs filing the approval Stipulation, and
19   the Covered Period as described in section 4.7.1, will be included in the mailing of
20   each Participating PAGA Member's check ("Notice Letter").  The Notice Letter
21   will notify each PAGA Member of the binding nature of the Released Claims
22   pursuant to Paragraph 6.1, and the Parties agree that such shall have the same force
23   and effect as if this Settlement were executed by each PAGA Member.  A sample
24   of this Notice Letter is attached hereto in the above-referenced **Exhibit 1**.

25          8.6.2  Each Settlement Payment check to PAGA Members will contain
26   the following short release and waiver on the back:

27          By depositing this check, I acknowledge that I have released and
           discharged all of the "Released Claims" against the "Releasees"
28

as described in the section entitled "Releases" of the accompanying notice letter, which I received and reviewed.

8.7     It will be presumed that a PAGA Member's Settlement Payment check was received if the check has not been returned within thirty (30) days of the original mailing of the payment check.  The date of the initial mailing of the payment check shall be conclusively determined according to the records of the Settlement Administrator.All Settlement Payment checks shall remain valid and negotiable for one hundred eighty (180) calendar days from the date of their issuance.  If there are uncashed checks following this period, the uncashed funds shall escheat to the State of California Department of Industrial Relations Unclaimed Wages Fund in the name of the PAGA Member who did not cash his or her check.

8.8     In the event that any Defendant defaults on any payment required by this Agreement, the Parties agree that judgment may be entered upon proof of non-payment.  Prior to judgment being entered, PAGA Counsel will notify Defense Counsel in writing within 48 hours of the default.  Defendants shall have 5 business days after the date of the notice to cure the default.  The sums in default are subject to statutory interest under California laws, but such interest shall not accrue if the default is cured within the 5 business days stated herein.  Plaintiffs will not request an entry of judgment if Defendants cure the default in full within this time period.

8.9     DUTIES OF THE PARTIES PRIOR TO APPROVAL.

8.9.1  Within thirty (30) days after full execution of this Stipulation, PAGA Counsel shall prepare and the Parties shall jointly apply to the Court via the fully executed Stipulation for approval of the proposed PAGA Penalties.  The Parties shall apply to the Court for the entry of an order approving as to form and content this Stipulation.

8.9.2  In conjunction with the Stipulation, the Parties will submit a proposed order to the Court that:  (1) approves the PAGA Penalties as defined in

1  this Stipulation; (2) dismisses the Related Actions with prejudice; (3) permanently

2  releases and bars all Participating PAGA Members from prosecuting any of the

3  Released Claims against Defendants and the Releasees; and (4) waiving all rights

4  to appeal.

5  **9.      MISCELLENEOUS.**

6        9.1    <u>Authority</u>.  The signatories hereto hereby represent that they are fully

7  authorized to enter into this Settlement and bind the Parties hereto to the terms and

8  conditions hereof.

9        9.2    <u>Mutual Cooperation</u>.  The Parties agree to fully cooperate with each

10  other to accomplish the terms of this Settlement, including but not limited to

11  execution of such documents and to take such other action as may reasonably be

12  necessary to implement the terms of this Settlement.  The Parties to this Settlement

13  shall use their best efforts, including all efforts contemplated by this Settlement

14  and any other efforts that may become necessary by order of the Court, or

15  otherwise, to effectuate this Settlement and the terms set forth herein.  As soon as

16  practicable after execution of this Settlement, PAGA Counsel shall, with the

17  assistance and cooperation of Defendants and their counsel, take all necessary

18  steps to secure the approval of this Settlement from the Court.

19        9.3    <u>No Prior Assignments</u>.  The Parties hereto represent, covenant, and

20  warrant that they have not directly or indirectly, assigned, transferred, encumbered,

21  or purported to assign, transfer, or encumber to any person or entity any portion of

22  any liability, claim, demand, action, cause of action or rights herein released and

23  discharged except as set forth herein.

24        9.4    <u>No Admission</u>.  Nothing contained herein nor in the consummation of

25  this Settlement is to be construed or deemed an admission of liability, culpability,

26  negligence, or wrongdoing on the part of Defendants or any of the Releasees.

27  Each of the Parties hereto has entered into this Settlement with the intention to

28  avoid further disputes and litigation with the attendant inconvenience and

1   expenses.

2      9.5   <u>Non-Evidentiary Issue</u>.  Whether or not the Effective Date occurs,

3   neither this Agreement nor any of its terms nor the Settlement itself shall be:  (a)

4   construed as, offered, or admitted in evidence as, received as, or deemed to be

5   evidence for any purpose adverse to Defendants or any other of the Releasees,

6   including but not limited to evidence of a presumption, concession, indication, or

7   admission by any of the Releasees of any liability, fault, wrongdoing, omission,

8   concession, or damage; or (b) disclosed, referred to, or offered in evidence against

9   any of the Releasees in any further proceeding in the Related Actions, or any other

10   civil, criminal, or administrative action or proceeding except for the purposes of

11   effectuating the Settlement pursuant to this Stipulation or for Defendants to

12   establish that a PAGA Member has resolved any of his/her claims released through

13   this Settlement.

14      9.6   <u>Attorneys' Fees, Costs and Expenses</u>.  Except as specifically set forth

15   herein, each Party shall bear its/his/her own attorneys' fees, costs and expenses,

16   taxable or otherwise, incurred by him/her/it/them arising out of the Related

17   Actions, and shall not seek reimbursement thereof from any other party to this

18   Stipulation.

19      9.7   <u>Captions and Interpretation.</u>  Paragraph titles or captions contained

20   herein are inserted as a matter of convenience and for reference, and in no way

21   define, limit, extend, or describe the scope of this Settlement or any provision

22   hereof.  Each term of this Settlement is contractual and not merely a recital.

23      9.8   <u>Modification.</u>  This Settlement may not be changed, altered, or

24   modified, except in writing and signed by the Parties hereto, and approved by the

25   Court.  This Settlement may not be discharged except by performance in

26   accordance with its terms or by a writing signed by the Parties.

27      9.9   <u>Execution by Plaintiffs</u>.  Because the PAGA Members are so

28   numerous, the Parties agree that it is impossible or impractical to have each PAGA

Member sign this Stipulation.  It is agreed that, for purposes of seeking approval of the Settlement, this Stipulation may be executed on behalf of the PAGA Members by the Plaintiffs.

9.10    Counterparts.  This Settlement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.  The counterparts may be transmitted electronically (PDF) or by facsimile.

9.11    Communications.  The Parties and their counsel agree that they will not issue any press releases or initiate any contact with the press, except to publicize the claims process.  All ads, public service announcements or other press contacts to publicize the clams process will be limited to describing the terms and conditions of the Settlement.  The Parties may respond to an inquiry from the press about the Related Actions only by describing what is available in public documents.

9.12    Neutral Employment References.  Defendants and its agents shall provide only dates of employment, position, and rates of pay for each of the Plaintiffs if contacted by a potential employer.

9.13    Successors.  This Settlement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

9.14    Construction.  The Parties hereto agree that the terms and conditions of this Stipulation are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Stipulation shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of this Stipulation.

9.15    Jurisdiction.  Upon issuing an order granting approval of this Settlement, the Court shall retain jurisdiction with respect to the implementation

1    and enforcement of the terms of the Stipulation, and all Parties hereto submit to the
2    jurisdiction of the Court for purposes of implementing and enforcing the
3    Settlement embodied in the Stipulation.  Any action to enforce this Stipulation
4    shall be commenced and maintained only in the Court.

5         9.16   <u>Severability</u>.  The Parties agree that if any immaterial provision of this
6    Stipulation is determined to be invalid, the invalid portion shall be deemed severed
7    and the remaining provisions of the Stipulation are deemed enforceable.

8         9.17   <u>Entire Agreement.</u>  This Stipulation and the exhibits attached hereto
9    contain the entire agreement between the Parties relating to the Settlement of the
10   Related Actions.  Excluding any Arbitration or Confidentiality Agreement
11   executed by PAGA Members, both of which will remain in full force and effect,
12   and all prior or contemporaneous agreements, understandings, representations, and
13   statements, whether oral or written and whether by a party or such Party's legal
14   counsel, are merged herein.  No other agreement, statement, or promise made as to
15   any matter addressed in this Stipulation shall be binding or valid.

16       I HAVE READ THE FOREGOING STIPULATION.  I ACCEPT AND
17   AGREE TO THE PROVISIONS IT CONTAINS, AND HEREBY EXECUTE IT
18   VOLUNTARILY WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.
19
20   Dated:      ___, 2017       By: _____
21                                       Santiago Bautista
                                         Plaintiff
22
23
24   Dated:      ___, 2017       By: _____
                                         Guillermina Bermudez
25                                       Plaintiff
26
27
28

JOINT STIPULATION OF SETTLEMENT AND RELEASE
CASE NOS.  13CV2473-JLS (KSC) AND 14CV2984-JLS (KSC)

1

2

Dated: _____, 2017            By: _____

3                                        Felix Gomez Diaz
                                         Plaintiff
4

5

6   Dated: _____, 2017            By: _maria martinez_____

7                                        Maria Martinez
                                         Plaintiff
8

9

10  Dated: _____, 2017            By: _____

                                         Lorenzo Lopez Pastrana
11                                       Plaintiff

12

13

14  Dated: _____, 2017            By: _____

15                                       Serafin Rincon
                                         Plaintiff
16

17

18  Dated: _____, 2017            By: _____

                                         Arturo Salgado Manzano
19                                       Plaintiff

20

21  Dated: _____, 2017            By: _____

22                                       Elisa Valerio Espinoza
                                         Plaintiff
23

24

25  Dated: _____, 2017            By: _____

                                         Rufino Zafra
26                                       Plaintiff

27

28

JOINT STIPULATION OF SETTLEMENT AND RELEASE
CASE NOS. 13CV2473-JLS (KSC) AND 14CV2984-JLS (KSC)

1

2

Dated: ___, 2017

3                                          By: _____
                                                Rufino Zafra
4                                               Plaintiff

5

6   Dated: 11 / 30, 2017                  By: _____
                                              Authorized Representative of
7                                             Defendant West Coast Tomato
8                                             Growers, LLC

9

10  Dated: 11 / 30, 2017                  By: _____
11                                            Authorized Representative of
                                              Defendant Harry Singh & Sons, LLC
12

13

14  Dated: 11 / 30 2017                   By: _____
15                                            Authorized Representative of
                                              Defendant Harry Singh and Sons
16                                            Farming Partnership, L.P.

17

18  **Approved as to Form and Content:**

19

20  Dated: ___, 2017                      CALIFORNIA RURAL LEGAL
21                                         ASSISTANCE, INC.

22

23                                        By: _____
                                              Cynthia L. Rice
24                                            Michael Meuter
                                              Jennifer Bonilla
25                                            Attorneys for Plaintiffs

26

27

28
                                    34 of 35

1

2
Dated: _____, 2017                    By: _____
3                                              Rufino Zafra
                                               Plaintiff
4

5

6
Dated: _____, 2017                    By: _____
7                                              Authorized Representative of
                                               Defendant West Coast Tomato
8                                              Growers, LLC

9

10
Dated: _____, 2017                    By: _____
11                                             Authorized Representative of
                                               Defendant Harry Singh & Sons, LLC
12

13

14
Dated: _____, 2017                    By: _____
15                                             Authorized Representative of
                                               Defendant Harry Singh and Sons
16                                             Farming Partnership, L.P.

17

18   **Approved as to Form and Content:**

19

20   Dated: Nov. 30 2017              CALIFORNIA RURAL LEGAL
                                       ASSISTANCE, INC.
21

22
                                       By: _____
23                                             Cynthia L. Rice
                                               Michael Meuter
24                                             Jennifer Bonilla
                                               Attorneys for Plaintiffs
25

26

27

28
                                34 of 35

                                     JOINT STIPULATION OF SETTLEMENT AND RELEASE
                                     CASE NOS.  13CV2473-JLS (KSC) AND 14CV2984-JLS (KSC)

1

2

Dated: *Nov. 30* 2017                    SCHOR VOGELZANG LLP

3

4                                        By: _____
                                              Julie A. Vogelzang
5                                             Lisa Hird Chung
                                              Attorneys for Defendant
6                                             West Coast Tomato Growers, Inc.

Dated: ___, 2017                         THE MOORE FIRM

7

8

9                                        By: _____
                                              William Moore
10                                            Attorneys for Defendants
                                              Harry Singh and Sons Farming
11                                            Partnership, L.P., and Harry Singh &
                                              Sons, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION OF SETTLEMENT AND RELEASE
CASE NOS. 13CV2473-JLS (KSC) AND 14CV2984-JLS (KSC)