UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERAFIN RINCON, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>WEST COAST TOMATO GROWERS, LLC, et al.,<br><br>　　　　　　　　　Defendants.<br>――――――――――――――――――<br>ELISA VALERIO ESPINOZA, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>WEST COAST TOMATO GROWERS, LLC, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 13-CV-2473-JLS (KSC)<br>Related Case: 14-CV-2984-JLS (KSC)<br><br>**ORDER GRANTING JOINT MOTIONS FOR SETTLEMENT**<br><br>(13-CV-2473, ECF No. 118)<br><br><br>(14-CV-2984, ECF No. 57) |

Presently before the Court are two Joint Motions for Settlement of PAGA Action. The two Motions were filed in *Rincon v. West Coast Tomato Growers*, 13-CV-2473, (ECF No. 57); and *Espinoza v. West Coast Tomato Growers*, 14-CV-2984, (ECF No. 118).[1] The Parties seek the Court's approval of the settlement. Given that both cases are to be resolved under one settlement, this Order **APPLIES** to both Joint Motions.

## BACKGROUND

Plaintiffs were seasonal agricultural workers directly employed by the Defendants. In 2013 and 2014, Plaintiffs mailed letters to the Labor and Workforce Development Agency ("LWDA"), the California Division of Occupational Safety & Health ("DOSH") and Defendants "giving notice of their intent to pursue a representative action pursuant to the [Private Attorney General Act] on behalf of themselves and fellow aggrieved field worker employees." ("*Espinoza* P&A," ECF No. 118-1, at 5.)[2] Plaintiffs then filed complaints in both matters. Plaintiffs alleged they did not receive compensation for time worked off-the-clock while employed by Defendants, and raised various other allegations related to Plaintiffs' expenses, meal periods, and working conditions. (*Id.* at 3–4.) Plaintiffs also alleged they improperly were required to bring their own tools and equipment, were not permitted legally-required meal periods, and worked in unsafe working conditions. (*Id.* at 4.) Some Plaintiffs also alleged they were wrongfully discharged. (*Id.*; "*Rincon* P&A," ECF No. 57-1, at 4.) Defendants deny any liability and assert the actions are not appropriate "for PAGA representation for any purpose other than settling the" two actions. (*Espinoza* P&A 4.)

---

[1] Plaintiffs in *Rincon v. West Coast Tomato Growers* ("*Rincon*") are Serafin Rincon, Santiago Bautista, and Rufino Zafra. Defendants in *Rincon* are West Coast Tomato Growers, LLC ("West Coast"); Harry Singh & Soons, Farming Partnership, L.P.; and Harry Singh & Sons, LLC. Plaintiffs in *Espinoza v. West Coast Tomato Growers* ("*Espinoza*") are Elisa Varerio Espinoza, Guillermina Bermudez, Felix Gomez Diaz, Maria Martinez, Lorenzo Lopez Pastrana, Arturo Salgado Manzano, and Cipriano Capistran. Defendant in *Espinoza* is West Coast. Plaintiffs in both cases will be collectively referred to as "Plaintiffs" and Defendants in both cases will be collectively referred to as "Defendants." The Parties filed near-identical Joint Motions and related documents in both actions.

[2] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

"Extensive discovery and pre-trial motion work" took place in both matters, and the Parties engaged in several attempts to settle the case with the magistrate judge and a mediator. (*Id.* at 5) The Parties then reached an agreement to settle both actions.

## LEGAL STANDARD

In 2003, the California Legislature enacted the Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 et seq., after declaring (i) that adequate financing of labor law enforcement was necessary to achieve maximum compliance; (ii) that staffing levels for state labor law enforcement agencies had declined and were unable to keep up with a growing labor market; (iii) that vigorous assessment and collection of civil penalties provides a meaningful deterrent to unlawful conduct; and (iv) that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to seek and recover civil penalties for Labor Code violations. *Gutilla v. Aerotek, Inc.*, No. 15-cv-191-DAD-BAM, 2017 WL 2729864, at *2 (E.D. Cal. Mar. 22, 2017) (citing 2003 Cal. Stat. 6629). Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 209 P.3d 923, 933 (Cal. 2009). Accordingly, a judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.*; *see also Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129, 147 (Cal. 2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party."). A trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(l)(2).

The PAGA does not establish a standard for evaluating PAGA settlements. Indeed, the LWDA has stated that "[t]he LWDA is not aware of any existing case law establishing

a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (quoting from the LWDA response in *O'Connor v. Uber Technologies Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016)). Courts have evaluated PAGA settlements "in light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory.'" *Id.* (quoting Cal. Labor Code § 2699(e)(2)). The Court agrees this is a proper evaluation of PAGA settlements, and will approve the settlement if the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals. *See Gutilla*, 2017 WL 2729864, at *3 (holding the same).

In addition, the Parties state the Court should apply the factors from *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), to evaluate the settlement. (*Rincon* P&A 10–11.) The *Hanlon* factors, which are used to evaluate class action settlements, include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. Many of these factors bear on whether a settlement is fair, and thus, the Court finds they are useful in evaluating the present settlement. *See Ramirez*, 2017 WL 3670794, at *3 (finding the same). The Court will evaluate the relevant *Hanlon* factors in its analysis.

## DISCUSSION

### I. Settlement Terms

Under the terms of the settlement, Defendants will pay Plaintiffs a total amount of $1,000,000. The settlement resolves, in both actions, Plaintiffs' claims and the PAGA claims Plaintiffs have alleged for themselves and on behalf of the PAGA Members who

4

13-CV-2473-JLS (KSC)
Related Case: 14-CV-2984-JLS (KSC)

participate in the settlement. (*Rincon* P&A 6.) Of the fund, Plaintiffs will receive varying degrees of money, totaling $255,000, in settlement of their individual claims. (*Id.*)[3] $30,000 of the fund will be used to pay Settlement Administration Costs and $20,000 will be attributed to civil penalties. (*Id.* at 6–7.)

Plaintiffs' Counsel request up to $150,000 in fees and costs, as approved by the Court. (*Id.* at 6.) Of this amount for Counsel, $50,000 "would be distributed only in the event that there are funds left in the PAGA Members fund after all Participating PAGA Members have been fully paid 100% of the PAGA Penalties and Wage Penalties according to the formulas set forth in the Settlement Stipulation." (*Id.* at 7–8.)

The remainder of the settlement ($615,000) will be allocated to settle the PAGA claims. (*Id.* at 6–7.) Current and former employees of Defendants will be provided with a notice and claim form, which they may return within one year if they wish to participate in the PAGA settlement (hereinafter, a "Participating PAGA Member"). (*Id.*) Participating PAGA Members will receive 100% of their underpaid wages, but if the remainder of the settlement amount is not sufficient to pay all underpaid wages, the funds will be distributed pro rata to Participating PAGA Members. (*Id.* at 7.)

As to nonmonetary relief, Defendant West Coast has agreed to make certain changes in its workplace practices and policies. (*Id.* at 8; ECF No. 118-6 ("New Practices at West Coast Tomato Growers").)

## II. PAGA Statutory Requirements

The PAGA statute imposes limits on litigants. First, to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Further, as to monetary relief, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages available

---

[3] Under the settlement, Plaintiffs are to receive the following funds: Serafin Rincon ($56,300); Santiago Bautista ($29,100); Rufino Zafra ($9,400); Felix Gomez Diaz ($31,600); Maria Martinez ($7,200); Lorenzo Lopez Pastrana ($19,700); Cipriano Capistran ($18,800); Elisa Valerio Espinoza ($31,600); Guillermina Bermudez ($31,600); and Arturo Salgado Manzano ($19,700). (*See* Rincon P&A 6.)

5

privately through direct or class action claims. *Gutilla*, 2017 WL 2729864 at *2. Because "an aggrieved employee's action under . . . [PAGA] functions as a substitute for an action brought by the government itself, PAGA is limited to the recovery of civil penalties; statutory penalties cannot be recovered. *Iskanian*, 327 P.3d at 147 (Cal. 2014). Any civil penalties recovered must be distributed as follows: 75% to the LWDA, and the remaining 25% to the aggrieved employees. Cal. Lab. Code § 2699(i).

As to the first requirement, Plaintiffs assert before filing both suits, they mailed at least one letter to the LWDA and to Defendants giving notice of their intent to file a PAGA action on behalf of themselves and other employees. (*Rincon* P&A 5.) The statutory requirement is met.

As to monetary relief, Plaintiffs are seeking civil penalties and underpaid wages. Under PAGA, "underpaid wages go[ ] entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees." *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1145 (2012). Here, 100% of the underpaid wages will be paid to Participating PAGA Members. (*Rincon* P&A 7.) And, 75% of the civil penalties will be payable to the LWDA and 25% of the penalties will be distributed to the Participating PAGA Members. (*Id.*) The settlement distributes these funds properly; this statutory requirement is met.

### III. Fairness of the Settlement

The Court will apply the *Hanlon* factors to determine whether the settlement is fair and reasonable in light of PAGA's policy goals. PAGA's public policy goals include "benefit[ting] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *O'Connor*, 201 F. Supp. 3d at 1132–33.

### A. Strength of Plaintiffs' Case

Plaintiffs state that although they believe in the strength of their case, they do face difficulties in proving claims that would rely on Plaintiffs' testimony. (*Rincon* P&A 13.) Plaintiffs face difficulty in proving they and the other workers "were similarly aggrieved for purposes of the PAGA." (*Id.*) Plaintiffs also state they would produce expert witnesses to prove the alleged health and safety violations, to which Defendants have already raised challenges. (*Id.*) There are risks and uncertainty facing both Parties going forward. Courts have noted that legal uncertainty favors approval of a settlement. *See, e.g., Browning v. Yahoo! Inc.*, Nos. 13-cv-3826-EMC, 15-cv-262-EMC, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). The Parties have acknowledged the inherent strengths (and potential weaknesses) in the two cases and have reached a settlement that will afford all potential PAGA members recovery. This factor weighs in favor of finding the settlement fair and reasonable.

### B. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Parties have diligently investigated the individual and PAGA claims brought by Plaintiffs. (*Rincon* P&A 13–14.) Plaintiffs assert they and Potential PAGA Members "face the risk of being bound by an adverse judgment that awards no penalties on the many claimed violations, particularly should other field workers, packers, and sorters, be found not to be aggrieved employees." (*Id.* at 14.) Plaintiffs also assert that they, as field workers or packing shed workers, "have undertaken risks in bringing this lawsuit as low-wage and immigrant workers." ("Bonilla Decl.," ECF No. 118-2, ¶ 8.) Defendants assert they face risk in this lawsuit, for liability may occur if the violations are proved and the members of its workforce are found to be aggrieved employees. (*Rincon* P&A 14.) Therefore, there is a risk of success for both sides, and both sides would face complex issues going forward should this case proceed. This factor weighs in favor of finding the settlement fair and reasonable.

### C. Amount Offered in Settlement

As described above, Defendants are offering $1,000,000 in settlement, and $615,000 of this is the PAGA allocation. (*Rincon* P&A 14.) This large recovery is significant for the Participating PAGA Members.[4] Also as part of the settlement, Defendant West Coast will institute workplace practices to ensure it is complying with California wage and hour laws. (*Id.*) This factor weighs in favor of finding the settlement fair and reasonable.

### D. Extent of Discovery Completed and Stage of the Proceedings

The Parties state they "engaged in extensive investigation, discovery and motion practice that spanned several years" before settling the two cases. (*Id.* at 15.) The Parties traded written discovery responses, engaged in over three dozen depositions, spoke to expert witnesses, and filed various motions and oppositions. (*Id.*) Defendants have provided "thousands of documents" to Plaintiffs, including the applicable policies and the payroll and timekeeping data for almost all PAGA Members. (*Id.*) All Parties have analyzed the data. (*Id.*) Because the Parties have engaged in extensive discovery and worked on this case for several years, this factor weighs in favor of finding the settlement fair and reasonable.

### E. Experience and Views of Counsel

Plaintiffs' counsel Ms. Bonilla declares she and her co-counsel have extensive experience in employment litigation. (Bonilla Decl. ¶ 16.) Ms. Bonilla declares in her experience, she has "observed the significantly diminished likelihood that these low-wage workers overcome barriers and power-imbalances to bring independent lawsuits and claims." (*Id.*) Ms. Bonilla and her co-counsel believe the settlement is fair and reasonable in this case, given the risks to Plaintiffs, the case law in the PAGA field, and potential trial

---

[4] As to the $255,000 from the settlement fund that is allocated to resolving individual claims, the Court is not required to approve this settlement provision. *See Ramirez*, 2017 WL 3670794, at *1 (holding the court is not required to approve settlement provisions resolving individual claims, but must approve the settlement provisions related to the PAGA claims (citing Cal. Lab. Code § 2699(1)(2))).

and appellate issues. (*Id.*) Given these opinions, this factor weighs in favor of finding the settlement fair and reasonable.

### F. *The Presence of a Government Participant*

As noted, Plaintiffs mailed at least one letter to the LWDA, the DOSH, and Defendants giving notice of their intent to pursue a PAGA action. (Bonilla Decl. ¶ 12.) Plaintiffs did not receive a letter from the LWDA in response. (*Id.*) Thus, the LWDA has not chosen to be a part of this lawsuit.

### G. *Conclusion*

After evaluating the *Hanlon* factors, the Court finds the settlement is fair and reasonable in light of PAGA's policy goals of "benefit[ting] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *O'Connor*, 201 F. Supp. 3d at 1132–33. Further, the Court does not find the award to be "unjust, arbitrary and oppressive, or confiscatory" under California Labor Code § 2699(e)(2). The Parties have engaged in discussions and negotiation and have agreed to a fair and reasonable resulting settlement.

## IV. Attorney's Fees

PAGA provides for reasonable attorney's fees and costs. Cal. Lab. Code § 2699(g). "The PAGA does not provide a specific standard for evaluating attorney's fees in connection with a settlement of PAGA claims." *Ramirez*, 2017 WL 3670794 at *6. "The 'case law construing what is a "reasonable" fee applies uniformly' to all federal fee-shifting statutes." *Haworth v. State of Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" to determine a reasonable attorney's fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Plaintiffs' Counsel requests a maximum of $150,000 in fees and costs, which is comprised of "costs in the amount of $39,485.99[5] and a guaranteed amount of $60,504.01 with an additional fees amount of up to $50,000 that will only be distributed by the settlement administrator to Plaintiffs' counsel" if there are funds left after all members have been paid 100% of the penalties. (*Rincon* P&A 16.) $100,000 represents 10% of the total settlement proceeds and $150,000 represents 15% of the total settlement proceeds. (*Id.*)

Under the percentage of the fund method, the typical "benchmark" for a reasonable fee award is 25% of the fund. *See Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1180 (S.D. Cal. 2016) (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015)). Under this approach, the Court finds the requested attorney's fees comprising of 10 to 15% of the settlement fund to be reasonable.

Under the lodestar method, the amount of fees is determined by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, "more than 1853.5 hours were billed" in the two matters. (Bonilla Decl. ¶ 19.) The lodestar for Ms. Bonilla, who works at an hourly rate of $300/hour, exceeds $323,000 (after a 25% reduction). (*Id.*) The lodestar for co-counsel Ms. Rice and Mr. Meuter, with hourly rates of $500/hour and $450/hour, also with 25% reductions, exceeds $72,500. Finally, the lodestar for Ms. Bly, a former attorney at Ms. Bonilla's firm, with an hourly rate of $350/hour, also with a 25% downward adjustment, exceeds $56,000. In sum, the calculated lodestar amount is more than three times greater than the requested maximum of $150,000 in fees and costs.

Given the above, Counsel requests $100,000 in fees and costs, with a maximum amount of $150,000. The Court finds the requested fees to be reasonable and appropriate, and **AWARDS** the amount requested. The Court allows Counsel to recover:

---

[5] Counsel declares it incurred costs of this amount "for deposition transcripts, interpreters, mediation, and expert expense." (Bonilla Decl. ¶ 20.) The Court finds these requested costs reasonable.

10

costs in the amount of $39,485.99 and a guaranteed amount of $60,504.01 with an additional fees amount of up to $50,000 that will only be distributed by the settlement administrator to Plaintiffs' counsel only in the event that there are funds left in the PAGA Members fund after all Participating PAGA Members have been fully paid 100% of the PAGA Penalties and Wages Penalties according to the formulas in the Settlement Stipulation.

(*Rincon* P&A 16.)

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motions for Settlement Approval and Plaintiffs' Counsel's request for attorney's fees. The Clerk **SHALL** close the files for both 13-CV-2473 and 14-CV-2984.

**IT IS SO ORDERED.**

Dated: February 12, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge